**STATE of Maine**

v.

**Thomas BASSFORD.**

Supreme Judicial Court of Maine.

Argued Sept. 22, 1981.

Decided Feb. 9, 1982.

Janet T. Mills, Dist. Atty., John C. Sheldon (orally), Asst. Dist. Atty., Farmington, for plaintiff.

Rowe & Sanders, David M. Sanders (orally), Livermore Falls, for defendant.

Before McKUSICK, C. J., and GODFREY NICHOLS, ROBERTS, CARTER, VIOLETTE, and WATHEN, JJ.

CARTER, Justice.

This case is before the Law Court on Report of an Interlocutory Ruling pursuant to M.R.Crim.P. 37A(b)[1] from the Superior Court, Franklin County. Since we find that it is not appropriate for us to address, at this stage of the proceedings, the constitutional issue raised in the report, we discharge the report as improvidently granted.

1. M.R.Crim.P. 37A(b) provides:

(b) Report of Interlocutory Rulings. If the court is of the opinion that a question of law involved in an interlocutory order or ruling made by it in any action ought to be determined by the Law Court before any further proceedings are taken therein, it may, on motion of an aggrieved defendant, report the case to the Law Court for that purpose and stay all further proceedings except such as are necessary to preserve the rights of the parties without making any decision therein.

## Factual Background

By a complaint originally brought in District Court and transferred to the Superior Court, Franklin County, the defendant, Thomas Bassford, stands charged with a violation of 17–A M.R.S.A. § 1106, Unlawful Furnishing of Scheduled Drugs. The criminal complaint states that on September 12, 1979, the defendant "did intentionally or knowingly furnish what he knew or believed to be a scheduled drug, namely, marijuana. . . ."

■■■ In the course of proceedings related to this complaint, Bassford filed in December of 1980 a motion to dismiss asserting, *inter alia*, that the presumption created by 17–A M.R.S.A. § 1106(3) was violative of both the Maine and United States Constitutions.[2] Specifically, the defendant contended that the presumption has no rational basis since it creates an arbitrary distinction between possession of one and one-half ounces of marijuana and a lesser amount, and that it requires the finder of fact to apply the presumption, given proof of the basic fact. The Superior Court dismissed this motion on the ground that the custom of this State requires that the Superior Court assume the constitutionality of legislative enactments.[3] The defendant then moved the Superior Court pursuant to M.R. Crim.P. 37A(b) to report, for determination by the Law Court, the issue of the constitutionality of § 1106(3).

The Superior Court granted Bassford's motion for report. In its order, the Superior Court noted that the constitutionality of § 1106(3) was "central to any disposition of this matter" and that a decision on this issue would in "one alternative result in final disposition of this action in favor of the defendant." The court characterized the question of law raised by the defendant of "sufficient import, doubt and immediacy . . . as to warrant . . . interlocutory determination of these issues by the Law Court."

The parties filed and the Superior Court certified under M.R.Crim.P. 39(j), an agreed

---

2. Title 17–A M.R.S.A. § 1106(3) provides:
 3. A person shall be presumed to be unlawfully furnishing a scheduled drug if he intentionally or knowingly possesses more than 1½ ounces of marijuana.

3. There is some currency of view that by custom in this State trial courts are to assume in proceedings before them the constitutionality of statutes, even when they are challenged on constitutional grounds. This view too broadly states the inhibitions upon the power of the trial court to deal effectively with questions of statutory constitutionality. "A single justice of the Supreme Judicial Court or of the Superior or any other statutory court, has the power to pass upon the constitutionality of a Statute *if the question be in issue.*" *Opinion of the Justices*, 147 Me. 25, 31, 83 A.2d 213, 215 (1951) (emphasis added) *quoted in Small v. Gartley*, Me., 363 A.2d 724 (1976). Trial judges should recognize that "it is the duty of *every court* to protect and uphold both the State and Federal Constitutions." *Small v. Gartley*, 363 A.2d at 731. These courts should not shrink from that duty by *assuming*, rather than *determining*, the constitutionality of a statute where the resolution of that issue is *necessary* to the resolution of any significant part of litigation properly before them. On the other hand, these courts should properly show the same level of judicial reticence which this Court would show in approaching and deciding questions of statutory constitutionality. The power to declare a statute unconstitutional is always to be exercised with reluctance; but the duty to do so when the validity of the enactment is directly drawn in question cannot properly be declined. Neither considerations of judicial economy and restraint nor of fundamental justice are well served by such a declination. On the latter consideration, the point is well put in *People v. Paddock*, 56 Misc.2d 123, 288 N.Y.S.2d 96, 98 (1968):

 . . . [A] defendant is entitled, not to just a part of his day in court. It would be unfair to refuse to consider any point that a defendant might raise in his defense and thereby require him to approach another tribunal. It is not justice. It is not fair to require him to go through a trial, face possible conviction in one court and then appeal to another court before he can be given a fair consideration of an argument that might have saved his time, the time of the courts, the expense involved and a possible conviction after a short or protracted trial.

 On the former consideration, it must be observed to be of great weight that when constitutional issues are fully litigated in the trial court, the Law Court, in carrying out its appellate function, has the benefit of the special expertise of the trial judge and of a factual record focused on the constitutional issue. *See State ex rel. DeKrey v. Peterson*, 174 N.W.2d 95, 100 (N.D.1970).

statement of the case. In this statement, the defendant acknowledged cultivating and possessing the marijuana seized by the police. The State conceded that the evidence available to it on the proscribed act of "furnishing" consisted solely of the acknowledged possession of marijuana in excess of one and one-half ounces. On appeal, the State contends that report of the instant question is improper.

### The Propriety of the Report Under M.R.Crim.P. 37A(b)

We have stated with respect to a report brought pursuant to either the criminal or civil rules of procedure[4] that "the Law Court retains the power to make its own independent determination whether in all the circumstances of a given case its decision 'on report' would be consistent with the Court's basic function as an appellate tribunal." *State ex rel. Tierney v. Ford Motor Company*, Me., 436 A.2d 866, 870 (1981); *State v. Placzek*, Me., 380 A.2d 1010, 1012 (1977); *State v. Foley*, Me., 366 A.2d 172, 173 (1976). Accordingly, we have discharged reports in a variety of contexts despite the certification of the question by the Superior Court.

The report of a question of law prior to the final disposition of a case is a major breach of the final judgment rule barring piecemeal appeals. *See e.g., State v. O'Brikis*, Me., 426 A.2d 893, 896 (1981); *State v. Placzek*, Me., 380 A.2d 1010, 1013 (1977). This requirement of finality "discourages undue litigousness and leaden-footed administration of justice particularly damaging to the conduct of criminal cases." *State v. LeClair*, Me., 304 A.2d 385, 386 (1973), *quoting DiBella v. United States*, 369 U.S. 121, 124, 82 S.Ct. 654, 656, 7 L.Ed.2d 614 (1962). Moreover, multiple trips to the Law Court strain the limited resources of the judicial system and add to the expense of the criminal process, a cost borne by the public in the overwhelming majority of criminal cases. *State v. Placzek*, 380 A.2d at 1013. The chary use of reports by courts and litigants is dictated by judicial economy and efficiency in order to avoid the delay and expense associated with piecemeal review.

More importantly, judicial restraint requires this Court to approach cautiously constitutional questions presented on report. We have discharged reports, in several instances, because the agreed statement of fact was too meager to establish that resolution of a constitutional question was necessary to a decision of the case. Thus, these issues were reported prematurely. *Blackwell v. State*, Me., 311 A.2d 536 (1973); *Johnson v. Maine Wetlands Control Board*, Me., 250 A.2d 825 (1969). Similarly, we discharged a report in *Matheson v. Bangor Publishing Co.*, Me., 414 A.2d 1203 (1980) because the constitutional issue was posed in the abstract and the possibility existed that the constitutional question would never reach the Law Court but for the report of the Superior Court.

■ Underlying these decisions is the fundamental rule of appellate procedure that a court should "avoid expressing opinions on constitutional law whenever a nonconstitutional resolution of the issues renders a constitutional ruling unnecessary." *Your Home, Inc. v. City of Portland*, Me., 432 A.2d 1250, 1257 (1981); *see Osier v. Osier*, Me., 410 A.2d 1027, 1029 (1980). The policy of judicial restraint is especially compelling when questions of constitutional dimensions are brought before this Court on report. For any number of reasons a question raised on report might not have reached the Law Court in the normal course of the appellate process. For example, the case may be disposed of favorably to the party aggrieved by the ruling precipitating the report; or the parties may elect not to appeal the final decision of the lower court. *See State v. Placzek*, 380 A.2d at 1013. In

---

4. The language of M.R.Crim.P. 37A(b) is essentially identical to its civil counterpart, M.R. Civ.P. 72(c). The criminal rule is based upon the civil rule. Glassman, *Rules of Criminal Procedure with Commentaries*, 320 (1967) (Reporter's Notes). Nevertheless, the rules may not be coextensive in light of differing policy considerations within the civil and criminal processes. *See State v. Placzek*, Me., 380 A.2d 1010, 1013 (1977).

that the procedure of report results in a piecemeal review of the proceedings below, this Court is especially wary of constitutional questions presented under this mode of review, lest we render a decision of constitutional magnitude not essential to the final disposition of a case.

 Viewed in the light of these policy considerations, we conclude that the procedure of report is an improper method for deciding the constitutional issue presented by this case. The defendant suggests that regardless of the characterization of the presumption as either permissive or mandatory and regardless of the standard adopted by this Court in evaluating its constitutionality, the issue may be properly decided on report because, in light of the State's concession in the agreed statement of the case, the only evidence available to convict the defendant is evidence of the basic fact—the prescribed amount of marijuana. The amount of evidence disclosed by the record to be available to the State suggests to us, however, that the resources of the judicial system and the public would be better spent by proceeding to trial on this matter, a trial that would in all probability last no longer than a day, rather than by engaging in a fractionalized review of the instant case. Moreover, the defendant overlooks the simple fact that he may well be acquitted in the proceedings below either by a jury following trial or by a trial judge following a motion for acquittal pursuant to M.R. Crim.P. 29. Thus, appellate resolution of the reported question may well be unnecessary. This factor, together with the absence of any counterbalancing probability that a decision on report will avoid a significant expenditure of the time and resources of the trial court, renders the use of a report inappropriate in this case. We can only conclude that resolution of the instant issue at the present appellate stage of the proceedings would fly in the face of the policy considerations articulated above.

We do not suggest that constitutional questions can never be addressed on interlocutory appeal. Indeed, the procedure of report well serves "the cause of justice by mitigating the harshness of the final judgment rule and by sparing the parties arduous trial litigation when important questions of law can be determined by the Law Court." *Laverdiere v. Marden*, Me., 333 A.2d 701, 702 (1975). We only find, by this decision, that the instant case does not present the type of question which "ought to be determined" by this Court before the complete resolution of the case by the court below.

The entry is:

Report discharged.

Remanded to the Superior Court for further proceedings.

All concurring.