Leo A. SIROIS and Shirley Jones

v.

Richard H. WINSLOW et al.

Supreme Judicial Court of Maine.

Argued Sept. 7, 1990.
Decided Jan. 9, 1991.

Daniel K. Kagan (orally), Valerie Stanfill, Berman, Simmons & Goldberg, Lewiston, for plaintiff.

Elizabeth N. Collet, John M.R. Paterson (orally), Bernstein, Shur, Sawyer & Nelson, Portland, for defendants.

Peter J. Brann, Asst. Atty. Gen., Thomas D. Warren (orally), Deputy Atty. Gen., Augusta, for Dept. of Environmental Protection.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD, COLLINS and BRODY, JJ.

GLASSMAN, Justice.

Pursuant to M.R.Civ.P. 72(c),[1] this matter comes to us on a report of an interlocutory ruling by the Superior Court (Cumberland County, *Alexander, J.*) granting the motion of the defendant, Richard H. Win-

---

1. M.R.Civ.P. 72(c) provides:

    **(c) Report of Interlocutory Rulings.** If the court is of the opinion that a question of law involved in an interlocutory order or ruling made by it in any action in the Superior Court ought to be determined by the Law Court before any further proceedings are taken

therein, it may on motion of the aggrieved party report the case to the Law Court for that purpose and stay all further proceedings except such as are necessary to preserve the rights of the parties without making any decision therein.

slow, to dismiss that portion of the complaint of the plaintiffs, Leo A. Sirois and Shirley Jones, seeking damages for alleged injuries to their property for which the plaintiffs had pending a claim previously filed with the Department of Environmental Protection (DEP). We hold that the report of the interlocutory ruling was improvidently granted and discharge the report.

In December 1987, the plaintiffs filed a claim for property damage and loss of income with the DEP pursuant to the Oil Discharge Prevention and Pollution Control Act, 38 M.R.S.A. §§ 541–560 (1964 & Supp. 1989), and the Underground Oil Storage Facilities and Ground Water Protection Act, 38 M.R.S.A. §§ 561 to 570–G (1964 & Supp.1989) (the Acts), alleging that leaking gasoline tanks on Winslow's property had contaminated their property. In February 1989, the plaintiffs filed the present action against Winslow in the Superior Court alleging trespass, nuisance and negligence and seeking damages for physical and emotional injuries and injuries to their property claimed to have been suffered as a result of the leaking gasoline tanks. Winslow filed a motion to dismiss the plaintiffs' complaint on the grounds that the plaintiffs' previously filed claim before the DEP sought recovery for the same damages and that the exclusivity provisions of the Acts, sections 551(2)(D) and 569(2–A)(E),[2] precluded the Superior Court action. In opposition to Winslow's motion to dismiss the property damage claims, the plaintiffs asserted that they had a constitutional right to have those issues determined by a jury.

After a hearing,[3] at which time the plaintiffs' claim before the DEP had not been resolved, the court granted Winslow's motion to dismiss as to those portions of the plaintiffs' complaint seeking damages for injuries to property or loss of income resulting directly or indirectly from the claimed gasoline leakage. The court, contrary to the plaintiffs' contention, held that the exclusivity provisions of the Acts did not on the facts of this case deprive the plaintiffs of their constitutional right to a jury trial on their property damage claim in violation of the provisions of article I, § 20 of the Maine Constitution. The court reasoned that this right was reserved to the plaintiffs by initially offering an election between the administrative remedy and the court action but where, as here, the plaintiffs had first invoked the administrative remedy that remedy became exclusive.[4] After a hearing, the court granted the plaintiffs' motion for a report of the court's interlocutory ruling and stayed all further proceedings pending a decision on the report.

We have repeatedly stated that the report of a question of law prior to the final disposition of a case by the trial court is a departure from the final judgment rule barring piecemeal appeals and should be used only on extraordinary occasions. Accordingly, we retain the power to make our own independent determination whether in all the circumstances of a given case our decision on a report would be consistent with our basic function as an appellate court and we would not be cast in the role

---

**2.** After the complaint in the instant case was filed in the Superior Court, we note that P.L. 1989, ch. 865, § 16, effective July 1, 1990 under an emergency preamble, repealed the exclusivity provision contained in the Underground Oil Storage Facilities and Ground Water Protection Act, 38 M.R.S.A. § 569(2–A)(E), and added a new provision, § 569(2–A)(G), expressly declaring that the third-party damage remedies under that Act were nonexclusive. P.L.1989, ch. 890, § B–148, effective July 14, 1990, without referring to P.L.1989, ch. 865, reenacted the Act with the original exclusivity provision intact. The exclusivity provision in the Oil Discharge Prevention and Pollution Control Act, 38 M.R.S.A. § 551(2)(D), remains unchanged. *See* P.L.1989, ch. 890, § B–117.

**3.** Winslow conceded at the hearing on his motion to dismiss that the Acts, which address only property damage and loss of income claims, could not preempt the plaintiffs' common law action for personal injuries. *See* 38 M.R.S.A. §§ 551(2), 569(2–A) (1964).

**4.** The court stated that because the facts of this case did not present the issue, it need not address whether a property damage claim filed in the Superior Court and seeking a jury trial without a previous claim having been presented to the DEP would be precluded by the exclusivity provisions of the Acts.

of an advisory board. We have also repeatedly stated that judicial restraint requires us to cautiously approach constitutional questions presented on report. *See State v. Bassford,* 440 A.2d 1059, 1061 (Me.1982); *Matheson v. Bangor Publishing Company,* 414 A.2d 1203, 1205–06 (Me. 1980). "For any number of reasons a question raised on report might not have reached the Law Court in the normal course of the appellate process." *State v. Bassford,* 440 A.2d at 1061.

■ Viewing the present report in the light of these policy considerations, we conclude that the procedure of report is an improper method for deciding the constitutional issue presented. The plaintiffs have yet to establish by either the DEP proceeding or the action in the Superior Court that the alleged contamination occurred or that Winslow was responsible for the contamination. To prevail in their claim for personal injuries, the plaintiffs must establish these two facts. If the plaintiffs are successful in doing so, they can then challenge the interlocutory ruling. If at the trial of this matter, Winslow is absolved of liability for the plaintiffs' claimed personal injuries, the plaintiffs will be precluded from asserting their common law claim for property damage. Here, as in *Matheson,* the constitutional issue posed is in the abstract and the possibility is evident that but for the report by the Superior Court this case and its constitutional question would never reach this court. 414 A.2d at 1206. We hold that the instant report does not present the type of question to be determined by this court prior to the complete resolution of the case by the trial court.

The entry is:

Report discharged. Remanded to the Superior Court for further proceedings.

McKUSICK, C.J., and ROBERTS and WATHEN, JJ., concur.

1. In *Portland Pipe Line Corp.,* the question was whether the Oil Discharge Act unconstitutionally denied a jury trial to those responsible for oil spills. We construed the Act to require a jury trial, not at the stage of the arbitration of the

COLLINS, Justice, dissenting.

I respectfully dissent. In my opinion, this case is a proper one for interlocutory report. I would reach the constitutional question the Court declines to address.

## I.

We have considerable discretion in considering issues raised on interlocutory report. *See Laverdiere v. Marden,* 333 A.2d 701, 702 (Me.1975). A substantial consideration in our exercise of that discretion is the extent to which it will further our statutory mandate to exercise "general superintendence" over the trial courts of this state "for the prevention and correction of errors...." 4 M.R.S.A. § 7; *see Laverdiere,* 333 A.2d at 702.

Judicial restraint and maintaining our appellate function, the primary reasons for the Court's decision not to consider the present question, are prudential considerations. They can be, and have on occasion been, overcome by competing considerations. *Compare Toussaint v. Perreault,* 388 A.2d 918, 920 (Me.1978) (report discharged; "[t]he report raises no constitutional issue and neither does it require the construction of any statute") *with Collett v. Bither,* 262 A.2d 353 (Me.1970) (report granted in civil discovery dispute, where interrogatories potentially implicated Fifth Amendment self-incrimination rights). This is a proper case for such competing considerations. Indeed, we have previously held, on interlocutory report, that the third-party damage provisions in one of the acts at issue here do not violate the right to a jury trial under article I, section 20 of the Maine Constitution. *Portland Pipe Line Corp. v. Environmental Improvement Comm'n,* 307 A.2d 1 (Me.1973), *appeal dismissed,* 414 U.S. 1035, 94 S.Ct. 532, 38 L.Ed.2d 326 (1973).[1]

While we must always be vigilant in our efforts to avoid issuing advisory opinions, we have entertained a broad spectrum of

third-party claim, but in the reimbursement proceeding against the responsible party, and, as so construed, not to violate jury trial rights. 307 A.2d at 29–30. Here, the party alleging a violation of jury trial rights is the injured third party.

constitutional questions presented on interlocutory report. *Compare State v. Bassford*, 440 A.2d 1059, 1061 (Me.1982) (report pursuant to M.R.Crim.P. 37A(b) discharged) *with Collett v. Bither*, 262 A.2d at 357. Underlying our reluctance to consider constitutional questions presented on report is our insistence to avoid calling into question the validity of a statute, under circumstances where the resolution of a factual dispute would remove the need to decide the issue. *See Bassford*, 440 A.2d at 1061–62. In this case, however, interlocutory consideration is appropriate, because we should resolve the constitutional issue at an early stage of the proceedings in the interest of judicial economy and the orderly process of this litigation.

The Court relies on the possibility that a trial of the personal injury issues remaining in this case after the Superior Court's partial dismissal might resolve factual issues against the plaintiffs, such that the case would not reach us on appeal. We do not require the discharge of every question on report when the case might be finally disposed of by a jury verdict. *See, e.g., Gendron v. Pawtucket Mut. Ins. Co.*, 409 A.2d 656 (Me.1979) (report granted to provide guidance on scope of motions *in limine*); *Davis v. Bath Iron Works Corp.*, 338 A.2d 146 (Me.1975) (report granted to determine whether Workers' Compensation Act precluded negligence action for asbestosis); *McNally v. Nicholson Mfg. Co.*, 313 A.2d 913 (Me.1973) (report granted to clarify status of breach of warranty and strict liability claims in product liability action). The standard the Court applies here would have prevented the resolution of each of these questions, and is thus unduly restrictive in precluding interlocutory report as to questions of law.

One of two things is now likely to happen. Either the plaintiffs will dismiss their outstanding personal injury claims pursuant to M.R.Civ.P. 41(a)(2), so as to have an appealable final judgment on the issues now presented, or they will proceed to trial on the outstanding personal injury issues. Upon the entry of final judgment, they will again have the ability to appeal, assuming they can establish contamination and the defendants' responsibility. In either case, the process will needlessly consume judicial resources, without altering the issues before us.

The question presented in this report is one we have not previously considered, and is of significant importance, governing what forum is available for plaintiffs seeking compensation for oil spill contamination. I respectfully disagree with the Court's refusal to consider this issue on interlocutory report on the basis that the plaintiffs may be unable to establish at trial that the contamination occurred or that the defendant was responsible.

## II.

The Superior Court refused to read the Acts as abrogating trespass, nuisance, and negligence actions within the scope of their coverage, in light of the maxim that legislation in derogation of the common law must be narrowly construed. But this maxim is inapposite here. Both statutes contain an explicit rule of liberal construction:

> This subchapter, being necessary for the general welfare, the public health and the public safety of the State and its inhabitants, shall be liberally construed to effect the purposes set forth under this subchapter.

38 M.R.S.A. § 557 (1989 & Supp.1990).[2] Thus there is no reason to apply a narrow construction to these legislative enactments regardless of whether they are in derogation of the common law. The Acts should be construed to do exactly what they plainly mean to do: provide an exclusive, non-judicial remedy for underground oil contamination damage that preempts, among other things, common law trespass, nuisance, and negligence claims.

## III.

Applying the maxim of statutory construction that, where two interpretations are possible, the proper construction of a statute is the one that renders the statute

---

2. Section 570–G is substantially similar.

constitutional rather than the one that renders it unconstitutional, the Superior Court construed the exclusivity provisions as providing for a voluntary election of remedies. This strained construction relied on the Legislature's use of the word "may" in the provisions creating the third-party damages procedures:

> Any person, claiming to have suffered damages to real estate or personal property or loss of income directly or indirectly as a result of a discharge of oil ... *may* apply within 6 months after the occurrence of such discharge to the commissioner stating the amount of damage alleged to be suffered as a result of such discharge.

38 M.R.S.A. § 551(2) (1989 & Supp.1990) (emphasis added).[3]

A more appropriate reading is that the Legislature intended by the use of the word "may" to create a right, not to require an election. Perhaps "is entitled to" would have been more precise, but "may" is sufficient, since what is being conferred is a right, not a duty. *See* R. Dickerson, *The Fundamentals of Legal Drafting* § 9.4 at 213–14 (2d ed. 1986). The use of the word "may," without more, does not necessarily imply an election of remedies.

The Superior Court relied also on the set-off provisions in each statute. The Oil Discharge Act provides that "[a]wards ... shall not include any amount which the claimant has recovered, on account of the same damage, by way of settlement with or judgment of the federal courts against the person causing or otherwise responsible for the discharge." 38 M.R.S.A. § 551(2)(E) (1989 & Supp.1990). This provision is necessary because in some cases there exists a federal right of action and the Legislature, although unable to preempt federal law, can prevent an unfair double recovery. "The forum provided by the Act ... is intended to be the 'exclusive'

state forum for resolving damage claims from oil spills." *; Portland Pipe Line Corp.,* 307 A.2d at 41. The parallel provision in section 569(2–A)(F) has been amended to use the term "a court of competent jurisdiction" in place of "the federal courts." P.L.1987, ch. 491. No explanation accompanied the amendment. In view of the legislative mandate that the statutes provide an exclusive remedy, it seems more likely that the Legislature merely meant to prevent unfair double recovery due to an action in federal court or (perhaps) in the courts of a sister state, than that it meant to undermine the entire remedial procedure created by the Act.

## IV.

I find it unnecessary to adopt the Superior Court's construction of the exclusivity provisions of the two Acts as mandating a voluntary election of remedies, because I disagree with the Superior Court's premise that the exclusivity provisions would violate jury trial rights under article I, section 20 of the Maine Constitution [4] if interpreted to grant exclusive jurisdiction of claims under the Acts to the DEP.

The Superior Court followed our most recent articulation of the proper test for a jury trial right under article I, section 20 of the Maine Constitution, as put forth in *City of Portland v. DePaolo,* 531 A.2d 669 (Me. 1987). In *DePaolo,* we held that a jury trial is constitutionally required, "except where by the common law and Massachusetts statutory law that existed prior to the adoption of the Maine Constitution in 1820 such cases were decided without a jury." *Id.* at 670. In my view, *DePaolo* left open the question whether jury trial rights apply where, as here, the Legislature has abolished a particular cause of action and substituted a new statutory remedy before a non-judicial tribunal.

---

**3.** Section 569(2–A) is substantially similar.

**4.** Me.Const. art. I, § 20 states in pertinent part: "In all civil suits, and in all controversies concerning property, the parties shall have a right to a trial by jury, except in cases where it has heretofore been otherwise practiced ..."

Contrary to the appellants' assertions, the "controversies concerning property" clause has no application to this case. *Cf. Ingram v. Maine Water Co.,* 98 Me. 566, 573, 57 A. 893 (1904) (claim for damages in flowage proceeding is not controversy concerning property).

Formerly, we labelled cases as "legal" or "equitable" in nature, and decided the right to a jury trial on that basis. *See, e.g., Portland Pipe Line Corp.*, 307 A.2d at 29 (legal or equitable nature, and hence jury trial right, depends on relief sought). The difficulty with this approach was that a number of actions seeking a monetary damages remedy had long been tried without juries; we upheld the lack of provision for a jury trial in such cases either by arbitrarily labelling them "equitable" in nature or by defining them outside the scope of the jury trial provision in Art. I, § 20. *Compare Ingram v. Maine Water Co.*, 98 Me. 566, 573, 57 A. 893 (1904) (no jury trial right in flowage proceeding; "[t]he claim for damages is not a civil suit or a controversy concerning property within the meaning of the constitution") *with Portland Pipe Line Corp.*, 307 A.2d at 29 (reinterpreting *Ingram* as allowing statutory procedure without jury trial only where "equitable in nature"). *Cf. also Farnsworth v. Whiting*, 106 Me. 430, 76 A. 909 (1910) (no jury trial right where case was of type tried in equity prior to 1820). This approach, unfortunately, failed to yield a principled solution.[5]

. In *State v. Anton*, 463 A.2d 703 (Me. 1983), we adopted a different standard. In *Anton*, defendants charged with a civil traffic infraction demanded a jury trial. We held that "[w]hen a new type of statutory action is created, the existence of a constitutional right to jury trial under article I, section 20, depends on the nature of the action.... If it is of a kind that was heard and determined by a common law court with a right to jury trial prior to the adoption of the Maine Constitution, then article I, section 20, guarantees the right today." *Id.* at 709 (citation omitted). Finding "no civil suit in 1819 that would have

been comparable to such a proceeding," we denied the appeal. *Id. Anton* both reconciled our prior cases and accommodated new statutory proceedings within our constitutional framework; it looked both to the nature of the proceeding and to its historical antecedents.

*DePaolo* overruled *Anton* without citing it.[6] We stated in sweeping terms:

If an action is civil in nature, exclusively seeking a money recovery, the parties are entitled to a jury trial even if that type of action was unknown at the time the Maine Constitution was adopted, unless at the time the Maine Constitution was adopted that action or its pre–1820 analogue was not tried to a jury either in the first instance or on an appeal. We today overrule any intimations or statements in our earlier cases that are incompatible with the broad view of the guarantee of a jury trial in civil cases contained in article I, section 20 of the Maine Constitution.

531 A.2d at 671. We held as we did in *DePaolo* because we read the "plain and broad" language of article I, section 20 as guaranteeing to "parties in all civil suits the right to a jury trial, except where by the common law and Massachusetts statutory law that existed prior to the adoption of the Maine Constitution in 1820 such cases were decided without a jury." *Id.* at 670. The question not answered by *DePaolo*, and raised here, is whether the language of article I, section 20, also guarantees the right to a jury trial where the Legislature has crafted a new remedy that is not a "civil suit." What makes this question difficult is the language of the exception; the parties have a right to a jury trial "except in cases where it has

---

5. Thus, for example, in *Portland Pipe Line Corp.* we labelled the money damages proceedings at issue in *Ingram* as "equitable" but the trust fund supervision provisions at issue in *Portland Pipe Line Corp.* as "legal." *Id.* at 29. *Cf. also Bean v. Central Maine Power Co.*, 133 Me. 9, 18, 173 A. 498 (1934) (on interlocutory report; proceeding under Mill Act held equitable in nature); *Kennebec Water Dist. v. City of Waterville*, 96 Me. 234, 52 A. 774 (1902) (on interlocutory report; no jury trial required in eminent domain proceed-

ing because proceeding held equitable in nature); *Moor v. Shaw*, 47 Me. 88 (1860) (on interlocutory report; flowage action held equitable in nature).

6. For a criticism of this aspect of our decision in *DePaolo*, see Note, *City of Portland v. DePaolo: Defining the Role of Stare Decisis in State Constitutional Decisionmaking*, 41 Me.L.Rev. 201 (1989).

heretofore been otherwise practiced." Me. Const. art. I, § 20. Does this clause prevent the Legislature from ever setting up a non-jury tribunal for any controversy that would have been settled by a common-law action prior to 1820?

In my view, it does not, because I read the word "cases" in the exception to refer directly to the term "civil suits." So understood, article I, section 20 does not forbid the Legislature to create new tribunals to administer new remedies; instead, the import of the exception is to save from the effect of the "plain and broad" language of the preceding clauses those actions, such as flowage or eminent domain, which were arguably within the scope of the term "civil suits" as then understood, but which were tried without a jury prior to 1820.

If it does, however, then *DePaolo* calls into question, among other things, the constitutionality of the Workers' Compensation Act.[7] When the Legislature proposed to make workers' compensation mandatory, the then sitting justices of this Court advised that no infringement on jury trial rights would thereby result, because "no such right in an employee as the right to workmen's compensation was known to the law at the time the Constitution was adopted ..." and thus the Legislature was free to set up a new statutory remedy without regard to jury trial rights relating to actions at common law. *Opinion of the Justices*, 315 A.2d 847, 854 (Me.1974) (quoting *Opinion of the Justices*, 309 Mass. 562, 568, 35 N.E.2d 1, 4 (1941)).[8] To the extent it includes new statutory remedies before

non-judicial tribunals within the constitutional meaning of "civil suits," *DePaolo* contradicts that advice.

Even the most zealous advocates of jury trial rights have stopped short of such an interpretation; for instance, one article written largely in anticipation of the *DePaolo* case specifically suggested that jury trial rights are inapplicable to "newly established rights and remedies or inherently administrative matters ... properly assigned to administrative bodies." Petrucelli & McKay, *The Right to Jury Trial Under the Maine Constitution*, 1 Maine B.J. 240, 245–46 (1986). We should not lightly suggest the possibility that a workers' compensation litigant is entitled to demand a jury trial, thereby increasing the cost and delay associated with the resolution of such claims.

If applied to a case like this one, *DePaolo* sets up a test for entitlement to jury trial that I find too restrictive of the Legislature's ability to commit new kinds of problems to specialized tribunals administering new remedies unknown to the common law. Such a specialized tribunal may bring to bear a technical expertise not necessarily to be found in the courts. I suggest that we should take this occasion to consider whether *DePaolo* affects the Legislature's ability to address new problems with new remedies and tribunals. We would do well to remember that commitment of remedial power, even to the courts of this state, is by legislative act.[9] The Legislature cannot abrogate the right to a

---

**7.** Workers' compensation, however, is not the only statutory remedy that could be affected by such a broad reading of *DePaolo*. *See, e.g.*, 26 M.R.S.A. § 968 (1988 & Supp.1990) (Maine Labor Relations Board's award of back pay to public employee); 26 M.R.S.A. §§ 979–D(4), 979–M (1988 & Supp.1990) (compulsory arbitration in public employee collective bargaining, reviewable only as to questions of law); 35–A M.R.S.A. § 1510 (Supp.1990) (Public Utilities Commission penalty for failure to file); 38 M.R.S.A. §§ 355–357 (1989 & Supp.1990) (municipality's entitlement to reimbursement for attorney fees from Lake Environmental Protection Fund).

**8.** Workers' compensation had previously been elective in nature; we held it consistent with

jury trial rights on a waiver theory. *Mailman's Case*, 118 Me. 172, 175, 106 A. 606 (1919). *See* 39 M.R.S.A. § 28 ("An employee ... shall be held to have waived his right of action at common law ..."). The election provision relied on in *Mailman's Case* was amended out of the Workers' Compensation Act by P.L.1973, ch. 746, *repealed and replaced by* P.L.1985, ch. 249.

**9.** The Legislature did not vest the courts of this state with full equitable jurisdiction until 1874. *See* L. Emery, *The Growth of the Equity Powers of the Maine Courts*, 9 Me.L.Rev. 1 (1915). *Cf. also Sawyer v. Gilmore*, 109 Me. 169, 180, 83 A. 673 (1912) (Maine Constitution grants enumerated powers to judiciary, but vests general power in Legislature subject to enumerated limitations).

jury trial in cases at law, but it clearly can abolish the underlying cause of action. I suggest that if it so desires, the Legislature may substitute a new remedy unknown to the common law, as it has done, for instance, after barring common law tort actions against employers subject to the Workers' Compensation Act. *See Fanion v. McNeal*, 577 A.2d 2, 4 (Me.1990); *Beverage v. Cumberland Farms Northern, Inc.*, 502 A.2d 486, 488–489 (Me.1985).[10] In my view, we did not hold otherwise in *DePaolo*, and we should now settle the question we left open in *DePaolo* in such a fashion as to remove the Superior Court's doubts about the constitutionality of the Acts when given their plain meaning.

I would entertain the report and give the Acts their plain meaning, finding no conflict with jury trial rights.

BRODY, Justice, with whom CLIFFORD, Justice, joins, dissenting.

I agree with Justice Collins that the report should be accepted by the Court. Because the majority of the Court has discharged the report, however, I do not express an opinion on the merits of this case.

---

**10.** "[I]f the power to do away with a cause of action in any case exists at all ... then the right of trial by jury is thereafter no longer involved in such cases. The right of jury trial being incidental to the right of action, to destroy the one is to leave the other nothing upon which to operate." 81 Am.Jur.2d 714, Workmen's Compensation § 19 (1976).