1997 ME 179

**Dale A. MORRIS, et al.**

v.

**Allen SLOAN, et al.**

Supreme Judicial Court of Maine.

Argued June 12, 1997.

Decided Aug. 6, 1997.

Michael Feldman (orally), Elizabeth A. Burns, Theodore H. Irwin, Jr., Brunswick, for plaintiffs.

Daniel Rappaport (orally), Elizabeth A. Olivier, Preti, Flahetty, Beliveau & Pachios, L.L.C., Portland, for Aroostook Medical Center.

Valerie Stanfill (orally), Lawyers Assistance Group, Auburn, Jack H. Simmons, Jeffrey Rosenblatt, Berman & Simmons, P.A., Lewiston, for Allen Sloan & Richard Price.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, and LIPEZ, JJ.

LIPEZ, Justice.

[¶ 1] The Superior Court (Knox County, *Marsano, J.*) granted a motion filed by the

plaintiffs Dale and Dallas Morris pursuant to Maine Rule of Civil Procedure 72(c)[1] to report this case for our determination of questions of law involved in the court's denial of their motion in limine filed in a medical malpractice action. In that motion the plaintiffs sought to exclude from evidence at the trial the unanimous findings of a prelitigation screening panel due to the alleged bias of the attorney panel member. The defendants assert that the report was improvidently granted. We agree and discharge the report.

### I.

[¶ 2] The facts have been submitted by stipulation. The medical malpractice action, filed in 1993, addresses the plaintiffs' claim that Dale Morris suffered severe brain damage as a result of the defendants' negligence in 1986. That action has been consolidated with another lawsuit in which the plaintiffs allege legal malpractice on the ground that their original attorneys failed to commence the medical malpractice action within the applicable statute of limitations. In June 1995 the court (*Marden, J.*) determined that pursuant to the Maine Health Security Act, 24 M.R.S.A. §§ 2851–2859 (1990 & Supp.1996),[2] the medical negligence issues had to be submitted to a prelitigation screening panel before any other issues, including the applicability of the statute of limitations, could be determined.[3]

[¶ 3] The Act requires that each prelitigation screening panel include an attorney.[4] In

1. The rule states:

   **Report of Interlocutory Rulings.** If the court is of the opinion that a question of law involved in an interlocutory order or ruling made by it in any action in the Superior Court ought to be determined by the Law Court before any further proceedings are taken therein, it may on motion of the aggrieved party report the case to the Law Court for that purpose and stay all further proceedings except such as are necessary to preserve the rights of the parties without making any decision therein.

2. Section 2851 of the statute states:

   1. **Purpose.** The purpose of mandatory prelitigation screening ... panels is:
   A. To identify claims of professional negligence which merit compensation and to encourage early resolution of those claims prior to commencement of a lawsuit; and
   B. To identify claims of professional negligence and to encourage early withdrawal or dismissal of nonmeritorious claims.

3. A statute of limitations defense may dispose of a case without a need to engage in the prelitigation screening process. See 24 M.R.S.A. § 2853(5) (Supp.1996) ("Both parties may agree to bypass the panel and commence a lawsuit for any reason, or may request that certain preliminary legal affirmative defenses or issues be litigated prior to submission of the case to the panel."). As the court noted, however, the defendant attorneys in the legal malpractice case have pleaded that the plaintiffs are without a cause of action because Dale Morris's mental illness tolled the running of the statute of limitations. Thus, the court ruled that whereas affirmative defenses often may be determined as a matter of law, in instances such as this one, where the critical issue providing the basis for the affirmative defense is a matter of fact, or a mixed question of law and fact, the parties are entitled to that determination as part of the trial, i.e., a jury question. Whether the period of time providing a bar to recover[y] under the statute of limitations exists may be affected by whether the plaintiff has or has had such a disability as may toll the period in accordance with 14 M.R.S.A. § 853.

4. The Act sets forth the procedure and standards to be applied to the selection of panel members as follows, in pertinent part:

   1. **Creation of panel lists....** Each clerk of the Superior Court shall maintain lists of health care practitioners, health care providers and attorneys recommended by the professions involved to serve on screening panels under this subchapter.
   2. **Selection of panel members; compensation.** Screening panel members shall be selected as follows.
   ....
   B. .... The chair shall choose from those lists 2 or 3 additional panel members as follows:
   (1) The chair shall choose one attorney;
   (2) The chair shall choose one health care practitioner ...;
   ...
   (4) When agreed upon by all the parties, the list of available panel members may be enlarged in order to select a panel member who is agreed to by the parties but who is not on the clerk's list.
   ....
   3. **Challenges; replacements.** If any panel member other than the chairman is unable or unwilling to serve in any matter or is challenged for cause by any person who is a party to a proceeding before a panel, the party challenging the member shall request a replacement from the lists maintained by the clerk under subsection 1, chosen by the chairman who shall so notify the parties. There shall only be challenges for cause allowed. The chairman shall inquire as to any bias on the part of a panel member or as requested by any party.

December 1995 the panel chair advised the parties that she had selected an attorney to serve on the panel and gave them the opportunity to file objections to his participation. The plaintiffs twice asked whether the attorney or his law firm engaged in physician malpractice defense work and twice were assured by the chair that they had no conflict of interest.

[¶ 4] In January the chair scheduled the panel hearing for April 5. On or about April 1 she notified the parties that the attorney she had selected would not be able to serve and gave them the name of a second attorney who was willing to serve. When that day or the next the plaintiffs pointed out that the second attorney's law firm had previously represented them in a workers compensation case, he was excluded as a panel member. On April 3 the plaintiffs received a message from the panel chair indicating that she was attempting to secure the panel service of a particular attorney or of one of the other attorneys at his law firm. In response, they telephoned the chair to find out the proposed panel member's identity and the nature of his practice. The chair did not return the call. On arriving at the hearing, two days later, the plaintiffs learned the attorney panel member's identity and that he did physician defense work in medical malpractice cases. The hearing resulted in the three-member panel's unanimous decision that the defendants did not deviate from the applicable standard of care and that none of the acts or omissions complained of proximately caused the alleged injury.

[¶ 5] Within several days the plaintiffs learned that the attorney panel member recently had solicited legal business from the defendants' insurers. The plaintiffs asked the panel chair to set aside the panel findings

given this information, and proposed that the parties waive a second panel hearing and proceed to trial. The chair responded that she did not have authority to vacate panel findings based on an alleged appearance of conflict by a panel member, and reiterated that she screened panelists only "for actual conflicts." The plaintiffs subsequently filed in the Superior Court both a complaint alleging medical negligence and a motion in limine to exclude the panel findings from evidence on grounds that the constitution of the panel was in violation of 24 M.R.S.A. § 2852 and Superior Court Rule 10(d)(iii). After a hearing, the court denied the motion, concluding that the panel was constituted appropriately pursuant to the statutory requirements, and that the plaintiffs had waived their opportunity to challenge the attorney panel member by participating in the hearing without raising any objection prior to its commencement.

[¶ 6] The plaintiffs filed a motion pursuant to M.R.Civ.P. 72(c) requesting that the court report to this Court the "question of law whether the appearance of bias of a [p]anel [m]ember and the fact that [they] did not know nor had any reason to know of the circumstances giving rise to said appearance of bias of said [p]anel [m]ember renders inadmissible the [p]anel findings." After a hearing the court granted the report and invited us to clarify the meaning of the statutory provision that directs panel chairs to "inquire as to any bias on the part of a panel member or as requested by any party," thereby raising issues that necessarily would involve analysis of the waiver claim.

## II.

■■■■ [¶ 7] "A report pursuant to Rule 72(c) is an exception to the final judgment rule and should be used sparingly." *Luhr v.*

---

24 M.R.S.A. § 2852.
The relevant rule promulgated by administrative order of the Chief Justice of the Superior Court provides:
10. *Panel Creation:* Upon notification of designation the chairman shall: ...
(d) prior to the selection of panel members, and after all parties have appeared, or the time for appearance has expired, the chairman shall meet with the parties or their representatives. At this meeting, the chairman shall:
....

(iii) disclose the names of persons he plans to designate as additional panel members and allow challenges for cause by the parties. Challenges for cause shall be allowed if a prospective panel member is related in business or personal life to one of the parties, or has an interest in the proceeding or could otherwise not sit impartially as a panel member. The chairman shall contact each potential panel member to inquire as to any interest or bias in the proceeding and make such other inquiries as are requested by any party. (§ 2852–3)....

*Bickford,* 661 A.2d 1141, 1142 (Me.1995) (citation omitted). Although the trial court makes a preliminary determination of the propriety of its report, we retain "the power to make our own independent determination whether in all circumstances of a given case our decision on a report would be consistent with our basic function as an appellate court and we would not be cast in the role of an advisory board." *Sirois v. Winslow,* 585 A.2d 183, 184–85 (Me.1991). In making that determination, we assess whether the question of law reported is "of sufficient importance and doubt to outweigh the policy against piecemeal litigation." *Swanson v. Roman Catholic Bishop,* 692 A.2d 441, 443 (Me.1997); *see Toussaint v. Perreault,* 388 A.2d 918, 920 (Me.1978) (discharging report where all issues could have been presented in one appeal taken after conclusion of the litigation, thereby avoiding "the 'piecemeal' approach which we deplore[ ]"). We also consider whether "a question raised on report might not have reached the Law Court in the normal course of the appellate process"—that is, whether the issue might not have to be decided at all because of other possible dispositions. *Sirois,* 585 A.2d at 185. Although Rule 72(c) does not require us to do so, we may take into account whether "our decision will in at least one alternative dispose of the action...." *Swanson,* 692 A.2d at 443. Finally, in the interests of judicial economy and the preservation of our appellate function, we must consider whether our involvement in a case prior to the entry of a final judgment will encourage piecemeal litigation in cases involving similar circumstances.

■ [¶ 8] We conclude that the report was improvidently granted for several reasons. First, although issues of bias are always important to the integrity of the decision-making process, the bias issues generated here are grounded in an unusual factual situation. These unusual circumstances lessen the importance of our decision as a source of general law. *See State v. Placzek,* 380 A.2d 1010, 1014 & n. 9 (Me.1977) ("The word 'importance' leads us to consider the significance of a Law Court decision on the reported question of law, not only to the parties but also to other members of the public," including "considerations of efficient judicial administration, ... precedential value or other consequences going beyond the immediate private parties.")

[¶ 9] Moreover, the questions reported may never reach us in the normal course of litigation. A judgment in the plaintiffs' favor would render these issues moot; so, in one alternative, would a disposition based on the statute of limitations issue.[5] On the other hand, our decision of the questions reported would not dispose of this action. Barring settlement, the case would have to proceed to trial whether the panel findings were to be admitted or excluded from evidence or, in the latter instance, whether a second panel hearing were to be held.

[¶ 10] Finally, just as we must reject unnecessary piecemeal litigation in any one action, we must avoid encouraging it in a particular type of case. Due to the mandatory role of prelitigation screening panels in medical malpractice actions, 24 M.R.S.A. § 2851, the circumstance of a unanimous panel finding and its evidentiary consequence at trial will be a recurring one. By deciding the issues reported here we would signal to other litigants who perceive irregularities in panel proceedings and who fail to win relief in the trial court that they, too, should seek a report. We could thereby be drawn inexorably into the trial process and all the related tactical considerations in such cases. To foster such excessive use of the report mecha-

---

5. If Dale Morris's mental condition is shown to have tolled the statute of limitations, then the medical malpractice action alone survives and the prelitigation screening panel findings are relevant. If the statute was not tolled, and if the plaintiffs' original lawyers were consulted before the statute ran against the doctors, the lawyers are exposed and, as the court already has ruled, the panel findings are relevant to the legal malpractice case because the plaintiffs would have to establish that they could have succeeded on their medical malpractice claim in order to recover on the legal malpractice claim. However, if the statute was not tolled and the evidence shows that the lawyers could not have taken action before the statute ran against the doctors, then neither the medical nor the legal malpractice action survives, the panel findings are irrelevant, and the issue of their validity would be moot.

nism would indeed serve to "transform the Law Court into an advisory board for the direction of the business of the court at *nisi prius,* a function the Law Court cannot assume." *Fidelity & Casualty Co. v. Bodwell Granite Co.,* 102 Me. 148, 152, 66 A. 314, 316 (1906) (citation omitted); *see also Placzek,* 380 A.2d at 1013 ("If assumption of such a role appeared undesirable to our predecessors in 1906, the multiplied and multiplying caseload of the 1977 Law Court makes it entirely impossible.").

The entry is:

Report discharged. Remanded for further proceedings consistent with the opinion herein.

