2001 ME 56

**Lawrence BUTLER**

v.

**Daniel MOOERS et al.**

Supreme Judicial Court of Maine.

Argued: Dec. 12, 2000.
Decided: April 6, 2001.

Stuart W. Tisdale Jr., Esq., (orally), Mary A. Davis, Esq., Tisdale & Davis, P.A., Portland, for plaintiff.

Paul F. Macri, Esq., (orally), Tyler N. Kolle, Esq., Berman & Simmons, P.A., Lewiston, for defendant.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.

WATHEN, C.J.

[¶ 1] This matter is before the Court on report, pursuant to M.R. Civ. P. 72(c) by the Superior Court (Cumberland County, *Delahanty, J.*) after denial of defendant Daniel Mooers' motion for summary judgment in Lawrence Butler's legal malpractice action. Mooers contends *inter alia* that Butler is barred by nonmutual collateral estoppel from bringing this action because of Butler's guilty pleas to federal criminal charges of bank fraud and illegal currency structuring. We accept the report and vacate the denial of summary judgment.

[¶ 2] The relevant allegations and facts may be briefly summarized as follows: Butler, an entrepreneur in the Portland area real estate market of the 1970s and 1980s, achieved a net worth of approximately $9 million by August of 1988. Butler's assets at that time included real estate, cash, marketable securities, and $1.5 million in a local bank account. Mooers's law firm represented Butler from the early 1970s, with Mooers acting as Butler's sole attorney by the 1980s. Butler alleges that in the early 1990s, when the Portland area real estate market began to fail, Mooers developed an "asset protection" plan for the $1.5 million bank account. In furtherance of this plan, the funds were transferred from the local bank to a number of other banks in the United States and then to banks in the Bahamas.

[¶ 3] After transferring the funds to the offshore accounts, and with his real estate holdings failing, Butler represented to banks foreclosing and engaging in workout plans on his real estate that he had no significant cash assets available to satisfy the debts on his real estate. Butler alleges that Mooers advised him that the transfer of funds to the offshore accounts was legal and that once achieved, Butler could state that he had no assets because they were beyond his direct control.

[¶ 4] In 1995, Butler was charged by indictment in the United States District Court with thirty-six counts of federal bank fraud, conspiracy, money laundering, currency structuring, and other charges for transactions that arose between 1990 and 1994 relating to the transfer of funds to the offshore accounts. In November of 1995, while represented by a different attorney, Butler pled guilty to two counts of bank fraud, 18 U.S.C. § 1344(1) and (2),[1]

---

1. 18 U.S.C. § 1344 reads as follows:
   § 1344, Bank fraud
   Whoever knowingly executes, or attempts to execute, a scheme or artifice—
   (1) to defraud a financial institution; or
   (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;
   shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.
   18 U.S.C. § 1344 (1995).

and two counts of illegal structuring of currency transactions, 31 U.S.C. §§ 5324(a)(3), 5313(a) and 5322, *see also* 31 C.F.R. § 103.11 and 18 U.S.C. § 2.[2]

[¶ 5] As part of the plea process, Butler acknowledged the accuracy of an extensive statement of the case presented to the court by the United States Attorney, including an acknowledgement that Butler engaged in these transactions and misled the banks knowingly and willfully, mental states which were essential for conviction of the crimes charged. Upon these convictions, Butler was fined $525,000 and sentenced to serve approximately 10 months in a federal corrections facility, plus a term of probation. Mooers was subsequently charged and pled guilty to one crime involving improper handling of approximately $12,000 of Butler's funds.

[¶ 6] Butler brought the present legal malpractice action against Mooers asserting that Mooers was negligent in advising him regarding the transfer of the funds to offshore investments, which resulted in Butler being convicted and sentenced for four crimes. Mooers moved for a summary judgment asserting that Butler was collaterally estopped from bringing a malpractice claim because he had pled guilty to the charges and acknowledged that he had acted knowingly and willfully, and that the action was also barred by the doctrines of judicial estoppel, *pari delicto,* and public policy. After a hearing, Mooers's motion was denied. The Superior Court granted Mooers' request to report the case to this Court pursuant to M.R. Civ. P. 72(c) and stayed further action pending our resolution of the issues reported.

2. The relevant sections are as follows:

§ 5324. Structuring transactions to evade reporting requirement prohibited
(a) Domestic coin and currency transactions.—No person shall for the purpose of evading the reporting requirements of section 5313(a) or 5325 or any regulation prescribed under any such section—
. . . .
(3) structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions.
31 U.S.C. § 5324 (Supp.1995).
§ 5313. Reports on domestic coins and currency transactions
(a) When a domestic financial institution is involved in a transaction for the payment, receipt, or transfer of United States coins or currency ... in an amount, denomination, or amount and denomination, or under circumstances the Secretary prescribes by regulation, the institution and any other participant in the transaction the Secretary may prescribe shall file a report on the transaction at the time and in the way the Secretary prescribes. A participant acting for another person shall make the report as the agent or bailee of the person and identify the person for whom the transaction is being made.
31 U.S.C. § 5313 (1983 & Supp.1995).
§ 5322. Criminal penalties
(a) A person willfully violating this subchapter or a regulation prescribed under this subchapter (except section 5315 or 5324 of this title or a regulation prescribed under section 5315 or 5324) shall be fined not more than $250,000, or imprisoned for not more than five years, or both.
(b) A person willfully violating this subchapter or a regulation prescribed under this subchapter (except section 5315 or 5324 of this title or a regulation prescribed under section 5315 or 5324), while violating another law of the Untied States or as part of a pattern of any illegal activity involving more than $100,000 in a 12–month period, shall be fined not more than $500,000, imprisoned for not more than 10 years, or both.
(c) For a violation of section 5318(a)(2) of this title or a regulation prescribed under section 5318(a)(2), a separate violation occurs for each day the violation continues and at each office, branch, or place of business at which a violation occurs or continues.
31 U.S.C. § 5322 (1983 & Supp.1995).

[¶ 7] Although the exception to the final judgment rule created by M.R. Civ. P. 72(c) is narrow, the interlocutory ruling in this case was appropriately reported. Whether a defendant who pleads guilty to knowingly and willfully defrauding a bank can maintain an action for malpractice against an attorney who provided legal advice concerning those banking transactions is an important issue that admits of some doubt and is very likely to arise later in the normal course of the appellate process in the present case. The issue can be resolved now without any further factual development, and our decision will in at least one alternative dispose of the action. *See Swanson v. Roman Catholic Bishop of Portland,* 1997 ME 63 ¶ 6, 692 A.2d 441, 443.

[¶ 8] Turning to the merits, we conclude that the doctrine of collateral estoppel is dispositive. The doctrine prescribes that when issues are actually litigated and finally adjudicated in a criminal proceeding, the conviction "conclusively establishes all facts essential to the final judgment of conviction" and is "preclusive in favor of a third party in a subsequent civil action against the defendant in the criminal case." *Hanover Ins. Co. v. Hayward,* 464 A.2d 156, 160 (Me.1983). We have applied the doctrine to situations where the conviction is based on a guilty plea instead of a jury verdict in reliance on the premise that it is the " 'full and fair *opportunity* to litigate in the prior suit' that protects due process rights." *State Mut. Ins. Co. v. Bragg,* 589 A.2d 35, 37 (Me.1991) (quoting *Hossler v. Barry,* 403 A.2d 762, 769 (Me.1979)).

[¶ 9] To establish legal malpractice in the present case, Butler must prove "(1) a breach by the defendant attorney of the duty owed to the plaintiff to conform to a certain standard of conduct; and (2) that the breach of the duty proximately caused an injury or loss to the plaintiff."

*Niehoff v. Shankman & Assocs. Legal Ctr., P.A.,* 2000 ME 214, ¶ 7, 763 A.2d 121, 124 (citations omitted). "Proximate cause exists in professional malpractice cases where 'evidence and inferences that may reasonably be drawn from the evidence indicate that the negligence played a substantial part in bringing about or actually causing the injury or damage and that the injury or damage was either a direct result or a reasonably foreseeable consequence of the negligence.' " *Id.* ¶ 8. Thus, even if we assume that Mooers negligently provided Butler with inaccurate legal advice, Butler's plea of guilty and his acknowledgement that he "knowingly and willfully" defrauded the banks precludes a finding that his criminal conduct was nonetheless proximately caused by Mooers' negligent legal advice.

The entry is:

Order denying a summary judgment vacated. Remanded to the Superior Court for entry of a summary judgment in favor of Mooers.

ALEXANDER, J., with whom DANA, J., joins, dissenting.

[¶ 10] I respectfully dissent. The record in this case is not sufficiently developed for us to accept the report and to rule that the collateral estoppel doctrine renders lawyers immune from suit for providing negligent advice, causing a client to commit crimes, when the client pleads guilty to those crimes.

[¶ 11] A report is an exception to the final judgment rule which we have repeatedly said "should be used sparingly." *White v. Fleet Bank of Maine,* 1999 ME 148, ¶ 2, 739 A.2d 373, 374; *Morris v. Sloan,* 1997 ME 179, ¶ 7, 698 A.2d 1038, 1041; *Luhr v. Bickford,* 661 A.2d 1141, 1142 (Me.1995); *State v. Placzek,* 380 A.2d 1010, 1013 (Me.1977).

[¶ 12] Even when the trial court makes a preliminary decision to report, we independently determine whether, under the circumstances of the particular case, a decision on the merits of the report "would be consistent with our basic function as an appellate court," or would improperly place us "in the role of an advisory board." *Morris*, 1997 ME 179, ¶ 7, 698 A.2d at 1041 (citing *Sirois v. Winslow*, 585 A.2d 183, 184–85 (Me.1991)). In making our independent determination, we assess a number of issues:

(1) whether the question of law reported is of sufficient importance and doubt to outweigh our policy against piecemeal litigation. *see id.; Swanson v. Roman Catholic Bishop of Portland*, 1997 ME 63, ¶ 6, 692 A.2d 441, 443; *Luhr*, 661 A.2d at 1142;

(2) whether the question raised on report is an issue that "might not have to be decided at all because of other possible dispositions," *Morris*, 1997 ME 179, ¶ 7, 698 A.2d at 1041; *Sirois*, 585 A.2d at 185;

(3) whether our decision on the issue will, in at least one alternative, dispose of the action, *see Swanson*, 1997 ME 63, ¶ 6, 692 A.2d at 443; and

(4) whether our involvement in the case prior to entry of a final judgment will encourage piecemeal litigation in cases involving similar circumstances. *See Morris*, 1997 ME 179, ¶ 7, 698 A.2d at 1041.

[¶ 13] The policy considerations we have developed for considering reports, judged against the present state of the record, counsel strongly against reaching the merits of the report.

[¶ 14] A legal malpractice action cannot wipe out a criminal conviction. If successful, it can only provide monetary compensation in the form of damages for any loss or harm proximately caused by an attorney's negligence. *See Brewer v. Hagem-* *ann,* 2001 ME 27, ¶¶ 5, 7, 771 A.2d 1030; *Niehoff v. Shankman & Assocs. Legal Ctr.,* 2000 ME 214, ¶ 8, 763 A.2d 121, 124; *Corey v. Norman, Hanson & DeTroy,* 1999 ME 196, ¶ 14, 742 A.2d 933, 940; *Steeves v. Bernstein, Shur, Sawyer & Nelson, P.C.,* 1998 ME 210, ¶¶ 12–13, 718 A.2d 186, 190.

[¶ 15] The Court's opinion applies the doctrine of nonmutual collateral estoppel to the proximate cause issue, but the nature of any injury that may be subject to proximate cause analysis is difficult to identify. The record indicates that, on Mooers' advice, Butler invested approximately $1.4 million in high yield investments through a money broker in the Bahamas. Had Butler's creditors had access to these funds, they would have been depleted. For his criminal acts, Butler paid approximately $525,000 in fines, but the record provides no indication of what happened to the remaining $900,000, plus interest and any appreciation. If, as a result of Mooers' advice, Butler retained funds that he otherwise would have lost, proving any additional damages may be problematic. Further, public policy considerations, recognized by law, may argue against Butler recovering anything further from his attorney if Butler's illegal acts, based on allegedly negligent advice, have already benefitted him by preserving $900,000. I do not suggest that this has occurred. The record does not account for the $900,000 and fails to reveal any disposition of the funds. Unless this issue can be resolved, the case could have another possible disposition that would make a ruling on the immunity issue unnecessary. *See Morris,* 1997 ME 179, ¶ 7, 698 A.2d at 1041; *Sirois,* 585 A.2d at 185.

[¶ 16] We have held that application of nonmutual collateral estoppel can occur "on a case by case basis if it serves the ends of justice." *State Mut. Ins. Co. v.*

*Bragg,* 589 A.2d 35, 37 (Me.1991). Recently, we held that nonmutual collateral estoppel can be invoked to apply a result from a criminal proceeding to bar a legal malpractice claim. *Brewer,* 2001 ME 27, ¶ 8, 771 A.2d at 1031. Thus, the question of law before us is not really one of great doubt. The real question we are being asked is: On the unique facts of this case, should the doctrine of nonmutual collateral estoppel be applied to use Butler's plea to bar his malpractice claim? That is more a question of fact than a question of law.

[¶ 17] If use of nonmutual collateral estoppel is permitted only *"on a case by case basis if it serves the ends of justice,"* *Bragg,* 589 A.2d at 37 (emphasis added), each application depends upon the facts of the case. Here, the facts are not yet fully developed. There is a serious issue as to what damages may have been proximately caused by any alleged negligence. There is also a serious issue, as asserted in Mooers' statement of material facts, regarding the nature of the advice which Mooers gave to Butler and the extent of Butler's reliance on that advice. These are not matters easily resolved by a ruling of law before the evidence is developed.

[¶ 18] We also must examine whether considering the report will promote piecemeal litigation. There is a significant summary judgment practice. We have been cautious to allow only a narrow range of interlocutory appeals from denials of motions for summary judgment, most often where there is a clear legal bar to the action such as immunity or res judicata. *See Pratt v. Ottum,* 2000 ME 203, ¶ 15, 761 A.2d 313, 318; *Dep't of Human Servs. v. Lowatchie,* 569 A.2d 197, 199–200 (Me. 1990).

[¶ 19] Because a report is an exception to the final judgment rule which should be used sparingly, we do not want to encourage easy access to appeals from denial of motions for summary judgment by casual-

ly allowing reports from such denials. Here a trial judge, after review of the record and the law, and mature consideration, determined that there are disputes as to material facts which preclude summary judgment. It should only be a rare instance where a trial judge would second guess his or her own judgment and report to us as a question of law an issue which the trial judge has already determined cannot be resolved as a matter of law.

[¶ 20] While our decision will dispose of the action in at least one alternative, consideration of the report is inconsistent with the other policy factors we have identified as important in deciding whether to consider reports on the merits. Consideration of the report from a denied motion for summary judgment will invite piecemeal litigation. It addresses a legal issue that otherwise might not have to be decided because of other possible dispositions. On an inadequate record, it addresses a question of law—immunity for lawyers who negligently advise clients to commit crimes—that should only be decided on a fully developed record. The basis for the court's action, application of the doctrine of nonmutual collateral estoppel, is not a legal issue about which there is great doubt. Accordingly, on this record, the report was improvidently granted.

[¶ 21] On the merits of the report, the Court's grant of immunity to lawyers who negligently advise clients to commit crimes for which the client pleads guilty is conceptually flawed. The malpractice occurred when the negligent advice was given. The injury or damages, if any, proximately caused by the malpractice began when Butler, acting on Mooers' negligent advice, knowingly committed his crimes. If Butler's malpractice claim was actionable before he entered his pleas, it is difficult to see how admitting his mistake and mitigating any further losses from reliance on his

lawyer's bad advice should forfeit Butler's malpractice claim. This result hardly "serves the ends of justice" which we have held is a prerequisite to application of the doctrine of nonmutual collateral estoppel.

[¶ 22] I would discharge the report and not reach this difficult, fact-dependent issue.